Edwards, Ch. J,
delivered the opinion of the court. After a statement of the case, he proceeded ¡ — Several questions have bqen made in the argument of this cause :
First— After the surveys had been recorded, and registered, were the re-surveys permissible, and warranted by law ?
The. second question involved the validity of Hart’s entries, and the manner in which they should be surveyed.
The third question respected the relative dignity, and merits of the claims put in issue between the appellants and appellees»
For the appellees, it was argued, that they had a right to re-survey — 1st, Upon general principles — 2ndly, Because of their infancy at the time the first surveys were executed — 3rdly, Because of the fraud of Daniel Boone, in misdirecting the surveys, for the purpose of saving his own claim — 4th, That the re-survey shall hold, at least, against the purchasers from said Boone, who are charged with notice of Boone’s fraud, before they purchased.
Upon general principles, we consider the surveyor, by virtue of his office, as having no authority to. lay off a particular tract of land, for any individual. To do so, he must have a special precept or authority.. In case of 400 acres, granted by the act of 1779, for settlement rights, the certificate of the commissioners is considered as a sufficient warrant* of authority to the surveyor to admit an entry, and afterwards to lay off the land. In all other cases, a warrant duly obtained from the proper authority, was required by that act.. When the special authority was once executed, it merged in the survey, and could hot authorise the survey oragain and again to brake surveys, as the whims, the frauds, or the better judgment of the owner of. the warrant., or certificate of authority, should dictate.
That mistakes and uncertainty in surveys-, and in the description of the boundaries, would, in some instances, *572 reader re-surveys desirable, the legislature contemplated, in enacting the original land law of 1779. But to guard against the mischiefs which might result from such resurveys, they were, under certain regulations, to be permitted by the county courts ; who were to hear the petition, after notice had been previously given, and thereupon, in their discretion, empower the surveyor of their county “To re-survey such lands, at the charge of the party, according to his directions, and the original or authentic title papers, taking care not to intrude upon the possessions of any other person, and to return a fair plat and certificate of such re-survey into the said court, to be examined and compared with the title papers; and if the court sha.ll certify, that, in their opinion, such re-survey is just and reasonable, the party may return the same, together with his material title papers, into the land-office, and demand the register’s receipt for them,” &c.
The salutary provisions of this act; the notice to be given to the owners of adjoining claims ; and advertisement at the door of the court-house, on two several court days, of the time of the intended application ; form a striking contrast, with the mere protest of the acting executor, and the re-survey thereon, as used in the present instance.
The legislature foresaw that many frauds and inconveniences, as well upon the commonwealth, as upon individuals, would enter in, if the door was open to resurveys at the will of every individual. The mischiefs which have resulted from a removal of one of the cheeks against impositions, that is to say, from the authority given by the act of 1784, to the register, to receive a plat and certificate of survey, and to issue a grant thereon, without the original warrant of survey, ought to warn the judge against removing others, (if it were in his power, and within his province) by judicial opinions.
The land law contains many expressions, which, so far from doing away the general principle, that a special authority, once executed, is merged and at an end, confirms and establishes the principle, with respect to the permission and authority to surveyors to lay off tracts of land for individuals. The land law of 1779, declares, that warrants “ shall be always good and valid, until executed by actual survey, or exchanged in the manner herein (by the act) áfter directed.”
*573 Again, where the lands on which “ any warrant is lo - eated, shall be insufficient to satisfy such warrant, the party may have such warrant exchanged by the register of the land-office, for others of the same amount in the whole, but divided as best may answer the purposes of the party, or entitle him to so much land, elsewhere,, as will make good the deficiency.”
“ Every person having a land warrant, founded on any of the before mentioned rights, and being desirous of locating the same on any particular waste and unappropriated lands, shall lodge such warrant with the chief surveyor of the county wherein the said lands, or the greater.part of them, lie.; who shall give a receipt for the same, if required.”
No surveyor, was permitted “ to admit an entry for any land, without a -warrant from the register of the land-office, except in the particular case of certificates from the commissioners of the county, for tracts of land not exceeding four hundred acres, allowed in consideration of settlements,” &c.
The plat and certificate of survey, is to express, among other things, “ the nature of the warrant and rights on which sueh survey was made.” The warrant was to be delivered to the party, with the plat and certificate of survey, and to be returned to the register’s office. Even where lands, surveyed by virtue of any warrant, were adjudged to another, upon a caveat, the party thus loosing his land, could net re-locate, or survey, by virtue of the old warrant; but was put to the necessity ofsuingouta new warrant from the register, for the quantity of land so granted to another, “ reciting the original warrant and rights, and the particular cause of granting the new warrant. And to prevent confusion and mistakes in the application, exchange, or removal of warrants, the register of the land-office is hereby directed and required to teave a sufficient margin in the record books of his office, and whenever any warrant shall be exchanged, renewed, or finally carried into execution by a grant, to note the same in the margin opposite to sueh warrant, With folio references to the grant, or other mode of application ; and also, to note id the margin opposite to each grant, the warrant or warrants, and survey, on which Such grant is founded, with proper folio references,” &c. t‘ All persons, as well foreigners as others, shall have a *574 right to assign or transfer warrants, or certificates of" ^vey, for lands.” _
_ Such are the expressions, and such is the general view of the land law respecting warrants; from which it seems to be the fair understanding of the act, that a special authority or warrant to the surveyor, was in every case necessary. That in the case of settlement rights, the certificate of the commissioners was the warrant; in others, the warrant from the register. That without such warrant or special authority, the surveyor was not permitted to make a survey for an individual, any more than any private person was permitted to lay off a tract of land. That the law considered every warrant as merged in the survey, when made a matter of record, at least. Whether that survey was in conformity with, the entry, or variant from it, cannot prevent the merger of the warrant. A survey variant from an entry, was not void, but voidable only. If not caveated, a grant issued upon it, which grant would hold the land against all claimants, except those who could shew a prior title in law or equity : whereas, if such survey was void ab initio, and not merely voidable, no subsequent act could give it validity ; the maxim being, quod ab initio non valet, in. tractu temp oris nonconvalescit.
Whatever doubts might be raised, as to the particular ,tiine at which the w irrant shall be said to be merged in., the survey ; whether from the time it is approved by the chief surveyor, and recorded ; or from the time it is delivered out to the owner ; or from the end of three months after the making of the survey ; we conceive the case clear, that after registering, the warrant was no. longer an authority to any surveyor, to receive an entry, or make another survey. The warrant, in fact, then, is, or ought to be with the register ; and we know of no authority inlaw, which could justify the register in delivering out the original warrant, lodged with a survey , made by virtue of such warrant.
The infancy of the owner of such warrant, is no where made an exception, by the land law, to this general principle. Indeed, infants are not (in the general) excepted out of the several forfeitures, conditions, and limitations, prescribed to other holders of land claims ; hut in this instance, there is no pretence for making an exception in favor of the complainants. The widow hav *575 ing a life estate in the lands, the guardian and curator, by testament, of the infants, the adult executrix appointed, who does not seem tohave renounced the trust or interest given by the will, did procure the survey to be made in 1784. Another executor arrived at full age, and died in 1786. Nathaniel Hart, another executor, arrived at full age in 1791, and jet no protest was made against the survey, or other survey executed, until 1798 ; fourteen years after the first survey had been registered.
If such re-surveys were indulged, it would make strange confusion in neighborhoods, and amongst the owners of adjacent claims.
If Daniel Boone had fraudulently misdirected the surveys in question, it might have affected his claim to land which ought to have been included in Hart’s surveys, and which Boone had appropriated to himself by such fraud ; and those who purchased from Boone, with notice of his fraud, might have been compelled to surren-* der their claim, to make up any deficiency which had thus been caused in thfe claims of the appellees : but such fraud could not give a right to re-survey generally, or restore the warrants to their original force and virtue.
The circumstances of the case are by no means sufficient to divest Estill’s title, derived from Boone, without notice of any fraud, as is stated upon the oath of the respondent; nor is there evidence in the cause, to convict Boone of fraud. His claim was to 1000 acres, granted by the commissioners, on the 20th December 1779, to Joseph Hughes, for marking and improving, in 1776; which pre-emption had been located by said Daniel Boone, as assignee of said Hughes, with the surveyor, on the 31st of May 1781, “tobe bounded by his old lines which were made by John Kennedy, in the year 1776, lying on a branch of Silver creek, adjoining qr near Capt. Hart.” Hart’s claim in controversy, was not granted until the 21st December 1779, and is but a village right; the pre-emption appendant to Hart’s settlement, which produces the interference with Hughes, was not located until the 24th of May 1782.
Hughes’s pre-emption was, therefore, of superior dignity to Hart’s village right, and the survey of Hugheses pre-emption, is conformable to the old lines made for him in 1776. Boone, therefore, had no fraudulent in *576 ducement to direct the surveys of Hart’s claims, contra* ry to location. His error, in this respect, ought to have been looked upon more charitably;, by"the appellees, seeing the executors, aided by the advice of sage counsel, have committed blunders in the manner of executing the re-surveys, his protest against the error of the old surveys notwithstanding.
Upon the second question, the coürt is of opinion, that the objects of general description, and of special location, called for in Hart’s entries, are identified, and were notorious, as called for by Hart’s certificate and entries.
Boone’s Stockfield tract acquired its name from a private survey, made for him under Henderson, and Co. in 1776. This survey contained one thousand acres, within lines run to the cardinal points, the north-east corner of which is identified. Although the particular lines of this survey are not deposed to, as objects of notoriety, yet the tract itself, is incontestibly proven to have -been notorious as early as the years 1779 and 1780; from which, the intendment is inevitable, that by reasonable inquiry and search, the boundaries could have been found ; otherwise, the name only, and not the tract, could have acquired notoriety; Boone’s Stockfield tract, is; therefore, considered a good object of location.
Boone’s Stockfield tract of 1000 acres, ás surveyed in 1776, in a square to the cardinal points, the north-east corner whereof, is represented on the connected plat, by •the letter D, and reported as a red-oak, regularly marked, &c. is to be adjoined by Hart’s settlement. This survey must also be made in a rectangular figure, as near « square as the distance from Hart’s improvement to thé Stockfield tract, will permit; and the said survey of the settlement, is to be so made, in relation to the said improvement, as that a parallel of latitude, drawn through the improvement, will bisect the survey.
The pre-emption appendant to the said settlement is to adjoin it, beginning at the south-east corner of the settlement, thence with the eastern boundary thereof, passing the north-east corner, and continuing the course until the base of a square area of 1000 acres is produced ; the said square area to be then laid offend constructed on said base, on the east thereof.
Lewis Craig’s settlement and pre-emption, as assignee of Jonathan Jennings, tvho Was a villager, is one of the claims put in issuer
*577 . The certificate was granted by the commissioners, on, the 4th of November 1779. On the next day; the settlement right was entered with the surveyor,, in the words , of the certificate, “ On the east side óf , Silver creek, beginning half a mile above the lands said to be claimed by Hart, running up the said creek for quantity.”
, The pre-emption was entered on the 26th of April 1780, “joining round his settlement.”
If Hart’s fork of Silver creek is to be supposed as the stream intended, then, the call to lie on the east side, will prevent any interference with Hart’s surveys of 1784. Silver creek is not represented on the plat; but if it had been, still great difficulties would remain to be solved. What land was “ said to be then claimed” by Hart, is very indefinite, when used in the entry of the settlement. Nathaniel Hart hád not then obtained his certificate ; his improvement was notorious ; but whether he claimed a pre-emption of 1000 acres, or 400 acres for raising a crop of corn on the land in 1779 ; or a settlement and pre-emption, as afterwards granted; or in what manner he claimed the land to lie áróúñd his improvement; the testimony does not inform us. That Nathaniel Hart was the person intended, does not certainly appear ; but perhaps this difficulty alone, would not have been insuperable.
The evidence shews that Hart, in 1775; made his choice at or near the mouth of the branch leading up to Twitte’s fort, and expected to hold a mile square, under -Henderson, and Co.; but the claims of that coihpany; had been silenced, before Hart improved in 1779. We think the settlement and pre-emption Of Craig, as as-signee of Jennings; is too vague and indefinite to be supported.
. But as Craig, and those claiming under him, have the elder grant, the appellees can recover only the land td which they have a superior equitable claim.
The manner of surveying the claims of the appellee's; has,been before directed ; but they must be confined to the surveys made in i 784;
We are of opinion; that the appellees have the superior equitable claim to so much of the settlement entry of their deceased ancestor, as surveyed and registered in the year Í784, as shall be included within the entry of *578 the settlement, as Herein before directed; and also with-ln the re-survey of the said settlement, on which the grant has issued : and to so much of the survey of the pre-emption made in 1784, as is included within the grant issued upon the re-survey of 1798, and shall also be found to lié within the said pre-emption entry, as herein before directed to be surveyed.
Great doubt arose, whether the appellees ought to have any decree, in as much as the surveys on which their grants are founded, were illegal and surreptitious ; and they have disclaimed the surveys of 1784. But it cannot be said that they have disclaimed the lands within their surveys and patents. Wherever the entries, surveys, re-surveys, and grants, correspond, the appellees shew an equity, united with a right, to have demanded and obtained their grants from the commonwealth j and thus far, it seems they ought to be relieved against elder grants. They have set up their ancestor’s entries as the foundation of their claim; they shew surveys, and grants; and demand relief to the whole extent, but ask also the general relief. Where there is, then, a union between t'he ease alleged, the relief sought, and an equity to have that relief, whether specially or generally prayed for, it seems proper to extend the relief by a decree pro tanto.
The decree of the circuit court, is erroneous, in sanctioning the re-,surveys, as well as in the construction given to the entries of the appellees.
It is, therefore, considered, that the said decree be reversed, annulled, and set aside ; that the cause be remanded to the said court, with direction to dismiss the bill, with costs, so far as it seeks relief against Daniel Boone, Samuel Estill, James Dinwiddie, and Daniel Maupin, claiming under the pre-emption entered by said Boone, as assignee of Joseph Hughes ; the said preemption not being interfered with by the surveys, or either of them, made for the appellees in 1784, by Thomas Allen, the deputy surveyor.
And it is further decreed and directed, that as to Lewis Craig, William Terrell, Charles Brown, and William Delany, the other defendants, a decree be entered against them, respectively, that they release and convey, by deed of quitclaim only, to the said complainants, so much of the land to which they have respectively acquired the elder title at law, under the settlement and *579 pre-emption of Lewis Craig, as assignee of Jonathan Jennings, as shall be found to be common to the survey of the settlement entry of said Nathaniel Hart, deceased, made and registered in 1784 ; to the re-survey thereof, on which a grant issued on the 15th of August 1800; and the entry pf said settlement, when run off according to the directions therefor, in this opinion, before given; and also so much of the said land to which they have claim, respectively, under said Craig’s settlement and pre-emption, as assignee of said Jennings, as shall fall within, and be common to the survey of the pre-emption entry of said Nathaniel Hart, deceased, as made and registered in 1784;. to the re-survey thereof, on. which a grant was obtained in August 1800; and to the entry of said pre-emption, when run oif as herein before directed, To ascertain which said respective quantities, by metes and bounds, the .surveyor shall be, by order of said court, directed to go on the lands in controversy, and survey and, lay off the said interferences, and make report the re of to the court, that justice and equity be done between, the parties, according to the foregoing opinion and decree ; and upon the coming in . of said report, that die said court make such decree, as to costs, as shall he equitable. Which is ordered to be certified, &c.
And it is further decreed and ordered, that the appellees pay to the appellants their costs in this behalf expended.